**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22133-ALTMAN**

**BLU PRODUCTS, INC.**,

*Plaintiff*,

*v.*

**EXCESS TELECOM, INC.**, *et al.*,

*Defendants.*

_____________________________________/

# ORDER

Our Plaintiff, a mobile-device developer, sued a telecommunications company and its CEO, alleging that the telecom company had placed orders for customized mobile devices worth millions of dollars and then refused to accept delivery in a fraudulent scheme to extract lower prices from the Plaintiff. The Defendants now challenge our personal jurisdiction over them. After careful consideration, we **DENY** their motion to dismiss.

## THE FACTS[1]

Our Plaintiff—BLU Products, Inc. ("BLU"), incorporated in Florida and headquartered in Miami-Dade County—"develops, designs, and sells mobile devices (i.e., tablets, cellphones, and smartphones)." Complaint [ECF No. 1-1] ¶ 9. Our Defendants are Excess, a "telecommunications company" that "offers discounted devices and wireless service to telephone and internet customers throughout the United States," *id.* ¶ 10 (cleaned up), and Cobby Pourtavosi, Excess's "President, CEO,

[1] We accept the allegations of the Amended Complaint as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

CFO, and Secretary," *id.* ¶ 4. Pourtavosi is "a citizen and/or resident of California[.]" *Ibid.* The Plaintiff alleges that Excess is "a California corporation," *id.* ¶ 3, while the Defendants contend that Excess is a "Nevada corporation with a principal place of business in Las Vegas, Nevada." Notice of Removal [ECF No. 1] at 2.[2]

BLU claims that, "[b]etween August 9, 2022, and April 16, 2024, Excess placed a series of purchase orders with BLU for the procurement and purchase of a sum total of 2.9 million smart mobile devices to be specially manufactured for Excess." Complaint ¶ 11; *see also* Purchase Orders [ECF No. 1-1] at 14–31. The "cumulative price of Excess's orders totaled $144,176,000[.]" Complaint ¶ 12. "[T]he purchase orders initiated by Excess required BLU to insert SIM cards specially suited to Excess's needs during the corresponding factory production." *Id.* ¶ 11. "BLU fully performed its obligations" under the Purchase Orders by "procuring and manufacturing 2.9 million smart mobile devices specially manufactured for Excess and installed with SIM cards specifically installed for Excess's benefit." *Id.* ¶ 17.

On April 4, 2025, the Plaintiff sued the Defendants in Florida state court, alleging that "Excess failed to uphold its end of the bargain." *Id.* ¶ 18. "At the time Excess placed its purchase order," the Plaintiff claims, it "had no intention of fulfilling its contractual obligations under the purchase orders at the agreed upon prices specified" in those orders. *Id.* ¶ 14. Instead, the Plaintiff's complaint alleges, "Excess intentionally 'overcommitted' on its orders—entering into simultaneous agreements with multiple vendors for exceedingly large quantities of smart mobile devices—as part of a deliberate and calculated scheme to manipulate such vendors, including BLU, into financial distress and [to] enable Excess to exploit this vulnerability by forcing vendors, including BLU, to either drastically reduce the agreed upon prices for the already procured and specially manufactured devices, or be forced to

[2] Because both parties agree that Excess isn't a citizen of Florida, we needn't resolve this dispute today.

abandon the orders entirely, at a seismic loss." *Id.* ¶ 15; *see also id.* ¶ 18 ("Using fraudulent and predatory practices to flood the marketplace, and BLU, with exceedingly large orders of devices and then refusing to honor the agreed upon pricing, Excess forced BLU – which had already procured 2.9 million devices in fulfillment of Excess's orders – to either drastically reduce the pricing on such devices or be forced to abandon the orders altogether at a seismic loss."). At first, the Plaintiff says, BLU "attempted to mitigate its damages by trying to resell the products[,]" but "Excess blocked" the attempted resales "by maintaining the position that BLU was prohibited from selling devices that had been installed with SIM cards specifically installed for Excess." *Id.* ¶ 18. As BLU explains, it was "left with no practicable choice but to mitigate its damages by selling to Excess 1.8 million of the 2.9 million devices ordered by Excess for a sum total of $14.8 million less than what was agreed upon in the purchase orders." *Id.* ¶ 20. This is in addition to "an unforeseen surplus of 1.1. million devices," which (BLU says) resulted in additional financial losses. *Id.* ¶ 21. BLU claims that the "Defendants perpetrated the foregoing scheme willfully and knowingly, in bad faith, and with fraudulent intent, seeking to leverage BLU's resulting financial vulnerability to Excess's financial advantage." *Id.* ¶ 16.

On May 8, 2025, the Defendants removed this case to our Court. *See* Notice of Removal [ECF No. 1]. And, on January 19, 2025, they filed their Motion to Dismiss (the "MTD") [ECF No. 22], arguing only that "[t]he Complaint fails to allege sufficient facts to support specific jurisdiction because the purchase orders that are the subject of the breach of contract actions contain no duties that the Defendants are required to perform or that take place in Florida." MTD at 14. The MTD is now fully briefed and ripe for adjudication. *See* Plaintiff's Response in Opposition to the MTD (the "Response") [ECF No. 30]; Defendants' Reply in Support of MTD (the "Reply") [ECF No. 34]. This Order follows.

## THE LAW

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of

jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "But if a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, Federal Rule of Civil Procedure 12(i) affords the district court discretion on how to proceed." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (cleaned up). "The district court has two options: (1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss under a prima facie standard without an evidentiary hearing." *Ibid.* (cleaned up). "[I]f the district court does not hold an evidentiary hearing," it simply reviews whether the plaintiff satisfies the prima facie requirement, which is a purely legal question." *Ibid.* (cleaned up). Still, "the district court must construe all reasonable factual inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (cleaned up).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## **ANALYSIS**

The MTD challenges our personal jurisdiction on two grounds. *First*, it says that the Plaintiff fails to satisfy Florida's long-arm statute. *Second*, it claims, albeit in the most cursory way, that our

exercise of personal jurisdiction over the Defendants would violate due process. We address—and reject—each argument below.

"The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction . . . and specific jurisdiction." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). "General jurisdiction lies in the forum where the defendant is domiciled or fairly regarded as at home." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (cleaned up). "A court in such a forum may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Ibid.* (cleaned up). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "To exercise specific jurisdiction, the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) (quotation marks omitted).

"[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022). *First*, we "determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute." *Ibid. Second*, we "decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Ibid.* Here, our Plaintiff presses three theories of personal jurisdiction: *one*, that the "Defendants caused injury to persons or property within the state of Florida"; *two*, that the "Defendants breached a contract[ ] in the state of Florida by failing to perform acts required by the contract[ ] to be performed in this state"; and *three*, that the "Defendants traveled to Florida on several occasions specifically to meet with BLU to negotiate the terms of the transactions that are the subject of this action." Complaint ¶ 5.

As we've said, "[w]e consider two questions in resolving personal jurisdiction: (1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). We'll follow this framework in the following sections.

## I. General Jurisdiction under the Florida Long-Arm Statute

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations" without offending due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l. Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)). The "paradigm all-purpose forums" in which a corporation is at home are the corporation's place of incorporation and its principal place of business, but we may also exercise general jurisdiction when a corporation's affiliations with the state are so "continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014) (cleaned up); *see also Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999) (interpreting "substantial and not isolated activity" to mean "continuous and systematic general business contact"). That said, "a defendant's operations will 'be so substantial and of such a nature as to render the corporation at home in that State' only in an 'exceptional case.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)). The "exceptional case" is one in which the contacts "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at 137. And Florida law codifies this aspect of general personal jurisdiction. *See* FLA. STAT. 48.193(2) ("A defendant who is engaged in

substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.”).

Excess isn’t incorporated in Florida and doesn’t have its principal place of business here, *see* Complaint ¶ 3 (alleging that Excess is “a California corporation”), and Pourtavosi is domiciled in California, *see id.* ¶ 4 (noting that Pourtavosi “is a citizen and/or resident of California”); *cf. Core Distrib. v. World Trade Corp.*, 2026 WL 1251628, at *3 (S.D. Fla. May 7, 2026) (Altman, J.) (“And ‘we may presume that, until controverted by fact, [a plaintiff] is domiciled at his current residence.’” (quoting *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011))). Still, BLU argues that we may exercise general jurisdiction over the “Defendants pursuant to FLA. STAT. § 48.193(2), because [the] Defendants engaged in substantial and not isolated activity within the state of Florida and maintain sufficient minimum contact with the state to subject themselves to the personal jurisdiction of the Florida courts.” *Id.* ¶ 6.

Our Defendants see things differently but don’t tell us why. Instead, the MTD simply says that “[t]he Complaint contains absolutely no allegations setting forth a basis for general jurisdiction.” MTD at 6. BLU answers that the Defendants “engaged in substantial and not isolated activity within” Florida because Excess executed “***thirteen separate transactions*** spanning a period of ***nearly two years***” with BLU. Response at 13 (emphasis in original). The “sheer number of [the] Defendants’ dealings with BLU, a Florida corporation, as well as the duration of the parties’ relationship,” BLU insists, “supports a finding that Defendants’ dealings in the state amount to continuous and systematic activity in that they plainly are both ‘continuous’ and ‘not isolated.’” *Ibid.* (quoting *Achievers Unltd. v. Nutri Herb*, 710 So. 2d 716, 720 (Fla. 4th DCA 1998) (“We find that Zitlin’s three year involvement with Achievers, as well as her subsequent involvement with Nutri Herb Inc., establishes that Zitlin had ‘continuous and systematic general business contacts’ with Florida sufficient to fall within the

ambit of section 48.193(2).”)). BLU further contends that “Excess’s activities are likewise ‘substantial’ in that they involved the purchase and sale of millions of dollars in product.” *Id.* at 14. But that’s not enough for us to exercise general personal jurisdiction.

As to Excess, “mere purchases, even if occurring at regular intervals, are not enough to warrant a State’s assertion of *in personam* jurisdiction over a nonresident corporation[.]” *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 418 (1984). And the same is true for Pourtavosi. *See Hess v. Pawloski*, 274 U.S. 352, 355 (1927) (“The mere transaction of business in a state by nonresident natural persons does not imply consent to be bound by the process of its courts.”). So, the mere fact that Excess (with Pourtavosi as CEO) entered into “thirteen separate transactions spanning a period of nearly two years” with BLU, even for transactions worth “millions of dollars,” doesn’t allow us to exercise general personal jurisdiction over them. Response at 14 (emphasis omitted); *see also Covenant Imaging LLC v. Viking Rigging & Logistics, Inc.*, 2020 WL 12442002, at *5 (S.D. Fla. Feb. 14, 2020) (Ungaro, J.) (“Merely conducting ongoing business in Florida is not enough for the exercise of general jurisdiction.”).

If we were to credit BLU’s argument, nearly every company that did business in Florida would be subject to general jurisdiction here. If that were the law, “[s]tate jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.” *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (cautioning against “the eventual demise of all restrictions on the personal jurisdiction of state courts”). We won’t take part in that.

If BLU wants us to exercise personal jurisdiction over our Defendants, then, it must rely on the doctrine of *specific* personal jurisdiction.

### II. Specific Jurisdiction under the Florida Long-Arm Statute

For its specific-jurisdiction arguments, the Plaintiff relies on FLA. STAT. § 48.193(1)(a)(6) and (7). Subsection 6 allows for specific jurisdiction over a nonresident defendant who causes "injury to persons or property within" Florida "arising out of an act or omission" by the nonresident defendant if the "defendant was engaged in solicitation or service activities within" Florida or if "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant" were "used or consumed within" Florida "in the ordinary course of commerce, trade, or use." FLA. STAT. § 48.193(1)(a)(6). Subsection 7, in turn, allows for specific jurisdiction over a nonresident defendant who breaches "a contract in" Florida "by failing to perform acts required by the contract to be performed in" Florida. *Id.* § (a)(7). The Plaintiff "need establish only one of these acts to satisfy the long-arm statute." *SkyHop*, 58 F.4th at 1223.

The Plaintiff alleges that Excess entered into "purchase orders" with BLU that "constituted valid, binding, and enforceable contracts between Excess and BLU," Complaint ¶ 26, and then "breached its obligations under the purchase orders by": (1) "failing and/or refusing to pay the agreed-upon prices reflected in the orders," *id.* ¶ 28, which provided for "payments . . . directed to Florida," Response at 8; *see also* Purchase Orders; and (2) "failing and refusing to take delivery of all goods ordered from BLU," Complaint ¶ 28 (emphasis omitted).

#### a. Subsection (1)(a)(6)

We'll start with Subsection (1)(a)(6), which allows plaintiffs to establish personal jurisdiction over "any cause of action arising from . . . [c]ausing injury . . . within this state . . . if . . . the defendant was engaged in solicitation or service activities within this state; or . . . [p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state." FLA. STAT. § 48.193(1)(a)(6). Our Plaintiff claims to have sustained only *monetary* damages. *See* Complaint ¶ 23 ("BLU has nevertheless suffered severe financial injury and sustained significant

financial damages as a result of Defendants' tortious conduct."). But "Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a)[6]." *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014); *see also Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735–36 (11th Cir. 2018) ("[J]urisdiction is not proper under § 48.193(1)(a)(6) because [the plaintiff] has alleged only economic injuries."). So, Subsection (1)(a)(6) cannot confer personal jurisdiction over the Defendants here.

**b. Subsection (a)(7)**

But we come out the other way on Subsection (1)(a)(7). "For [S]ubsection (1)(a)(7), specific personal jurisdiction requires that the cause of action arise from a breach of contract by the defendant in Florida where the [defendant] fails to perform acts required by the contract to be performed in Florida." *EcoMed, LLC v. Asahi Kasei Med. Co.*, 2018 WL 6620313, at *3 (S.D. Fla. Oct. 31, 2018) (Reinhart, Mag. J.), *report and recommendation adopted*, 2018 WL 6620467 (S.D. Fla. Nov. 28, 2018) (Rosenberg, J.); *see also* FLA. STAT. § 48.193(1)(a)(7) (providing for jurisdiction where the defendant "[b]reached a contract" in Florida by "failing to perform acts required" to be performed in Florida.). "This provision means that there must exist a duty to perform an act *in Florida*," *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999), and "the failure to pay a contractual debt where payment is to be made in Florida, satisfies Florida's Long–Arm Statute," *Brennan v. Roman Cath. Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 855 (11th Cir. 2009) (citing *Posner*, 178 F.3d at 1218).

"Specific jurisdiction is claim-specific, and a court may hold it has specific personal jurisdiction over a defendant as to one claim but not as to another in the same suit." *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) (Altonaga, J.); *see also Cronin v. Wash. Nat. Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993) ("In this case the Florida long-arm statute . . . provides personal jurisdiction over the contract claim but arguably not the negligence claims." (cleaned up)); *Pipistrel d.o.o.*

*v. Ciccolini*, 400 So. 3d 665, 670 (Fla. Dist. Ct. App. 2024) (holding that "specific jurisdiction is 'claim-specific'" (quoting *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1132 (Fla. Dist. Ct. App. 2018))).

So, we must now determine whether we have personal jurisdiction over *each* of the Plaintiff's four claims. To answer this question, we ask whether each claim "arise[s] out of or relate[s] to" the Defendants' alleged failure to pay BLU under the Purchase Orders. *Bristol-Meyers*, 582 U.S. at 262; *see also Fuqua v. Turner*, 996 F.3d 1140, 1154–55 (11th Cir. 2021) ("A party 'confers personal jurisdiction on the court by consent' insofar as it fails to raise objections in its pre-answer motion to dismiss. And once a party confers personal jurisdiction, the district court may not dismiss the action based on the overlooked defect." (quoting *Paradazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (cleaned up))).

**i. The Breach of Contract (Count I)**

We'll start with Count I *both* because it's first *and* because it's the only claim the Defendants actually challenge on personal-jurisdiction grounds. In Count I, BLU alleges that the Purchase Orders "placed by Excess constituted valid, binding, and enforceable contracts between Excess and BLU," Complaint ¶ 26, and that "Excess [ ] breached its obligations under the [P]urchase [O]rders by failing and/or refusing to pay the agreed-upon prices reflected in the orders," *id.* ¶ 28. Our only question, then, is whether, under the relevant contract, payment was to be made *in* Florida. *See Brennan*, 322 F. App'x at 855 ("[T]he failure to pay a contractual debt[,] where payment is to be made in Florida, satisfies Florida's Long–Arm Statute." (citing *Posner*, 178 F.3d at 1218)). We conclude that it was.

"In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in

ruling on a motion to dismiss."); *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1303 (11th Cir. 2022) ("The Civil Rules of Procedure provide that an attachment to a complaint generally becomes part of the pleading for all purposes, including for ruling on a motion to dismiss." (cleaned up)). Here, the Plaintiff attached the Purchase Orders to its Complaint, so we may consider them in resolving this jurisdictional dispute.

Each Purchase Order contains "Wire Intstructions [sic]" providing the "SWIFT" and "Wire Routing Number" for the Plaintiff's account at "Fifth Third Bank." Purchase Orders at 14. And while the address for Fifth Third Bank is listed as "38 Fountain Square Plaza, Cincinnati, OH 45263," the Purchase Orders also state the following: "Credit to: BLU Products, Inc. 10814 NW 33 Street #100 Doral, Florida 33172[.]" *Ibid.*; *see also id.* at 15 (same); *id.* at 16 (same); *id.* at 17 (same). The parties disagree on what to make of these two addresses. The Defendants contend that "[t]he wire instructions included in the purchase order exhibits direct payment to an Ohio bank," and, therefore, that "the payments to Blu Products were issued into the State of Ohio." MTD at 9. The Plaintiff disagrees and argues that, "although BLU's bank accounts are with national banks, its own bank account is in Florida, such that payments to that account would be directed to Florida." Response at 8; *see also* Declaration of Saul Cohen, Executive Vice President of BLU Products ("Cohen Decl.") [ECF No. 30] ¶ 26 ("Although BLU Products banks with a national bank based out of Ohio, BLU Products does its banking at a local Florida branch. In other words, BLU Products' bank accounts are with national banks, but its own bank account is in Florida, such that payments to that account are directed to and deposited in Florida.").

Unfortunately, *neither* party cites any case law on this crucial issue—*viz.*, whether "payment is due" at the location of the bank (Ohio) or of the recipient (Florida). *Brennan*, 322 F. App'x at 855. "Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk." *S.W. v. Tropical Paradise Resorts, LLC*, 2026 WL

806786, at *13 (S.D. Fla. Mar. 24, 2026) (Altman, J.) (quoting *Sideridraulic Sys. SpA v. Briese Schiffahrts GmbH & Co. KG*, 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011) (Steele, C.J.)); *see also Tursom v. United States*, 2021 WL 1647888, at *2 n.2 (S.D. Fla. Apr. 27, 2021) (Bloom, J.) ("The premise of our adversarial system is that . . . courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983))). Since the Defendants must "raise, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction" at the motion-to-dismiss stage, *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009), their failure to cite any authority on this crucial issue is reason enough to deny their MTD, *see Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited]."); *Horowitz v. Allied Marine, Inc.*, 2023 WL 3568113, at *19 (S.D. Fla. May 19, 2023) (Altman, J.) ("And a party's failure to cite relevant legal authorities for its position is reason enough to deny that party's motion.").

In any event, for three reasons, the Purchase Orders satisfy the strictures of § 48.193(1)(a)(7). *One*, the phrase "[c]redit to . . . Doral, Florida 33172" plainly suggests that payment was to be made *in* Florida. After all, Excess was required to pay BLU, a Florida company with its headquarters and principal place of business in Florida. True, the payment was to be made *through* an Ohio bank. But the payment was ultimately due to, or credited to, BLU *in Florida*. Judge Corrigan of the Middle District of Florida recently confronted a similar scenario. *See Power Rental Op Co., LLC v. V.I. Water & Power Auth.*, 548 F. Supp. 3d 1193 (M.D. Fla. 2021) (Corrigan, J.). The parties there had signed a note, under which the defendant agreed to make regular payments to the plaintiff. *Id.* at 1197. "With respect to the place of payment, the Note stipulate[d] that [the defendant] 'hereby promises to pay to the order of [the plaintiff] at 3600 Port Jacksonville Parkway, Jacksonville, Florida' the principal sum plus

interest, and that [the defendant] was to make the payments via wire transfer to [the plaintiff's] New York bank account." *Ibid.* In addition, "Note payment invoices sent to [the defendant] by [the plaintiff] also state[d] that balances were payable to [the plaintiff] through its New York bank account." *Ibid.* Ultimately, Judge Corrigan concluded, as we do here, that the payment was to be made in Florida. In his words:

> [The defendant] asserts that since it only wired payments to the New York bank, payment was due and made in New York, not Florida. However, . . . [the defendant's] reasoning is flawed. [The defendant's] debt is owed to [the plaintiff], a Florida limited liability company with its headquarters and principal place of business in Florida, and the New York account to which the Note required [the defendant] to wire payments did not have an existence independent of [the plaintiff's] Florida headquarters, which managed, accessed, and maintained the account. Accordingly, payment under the Note was due in Florida, not New York.

*Id.* at 1197–98. We agree with Judge Corrigan's well-reasoned analysis and find that the Purchase Orders directed payment in Florida.

*Two*, the record evidence supports this conclusion. The Plaintiff has submitted a declaration explaining that, "[a]lthough BLU Products banks with a national bank based out of Ohio, BLU Products does its banking at a local Florida branch. In other words, BLU Products' bank accounts are with national banks, but its own bank account is in Florida, such that payments to that account are directed to and deposited in Florida." Cohen Decl. ¶ 26. And while the Defendants *argue* in their MTD that "[t]he wire instructions included in the purchase order exhibits direct payment to an Ohio bank," they provide no evidence—no affidavit, no declaration, no piece of testimony—to support their reading of the Purchase Orders. And that's not good enough to prevail here. *See Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1504 (11th Cir. 1984) ("If the defendant raises a question of personal jurisdiction and the district court elects to decide the question solely on the basis of the pleadings and affidavits, it must accept as true those allegations of the complaint which are not controverted by defendant's evidence and deny the motion to dismiss if the plaintiff presents a prima facie case of

jurisdiction[.]").[3] Because we "must construe all reasonable factual inferences in favor of the plaintiff," *Diamond Crystal Brands*, 593 F.3d at 1257, the Defendants, in our view, have failed to show that the Purchase Orders required payment outside Florida.

*Three*, even if the Purchase Orders were ambiguous, we'd still have personal jurisdiction here because, in the absence of an unambiguous contractual provision, courts resort to the applicable default rule. *See New York v. New Jersey*, 598 U.S. 218, 224 (2023) ("Because the Compact's text does not address whether a State may unilaterally withdraw, we look to background principles of law that would have informed the parties' understanding when they entered the Compact. This Court has long explained that interstate compacts are construed as contracts under the principles of contract law. To that end, the Court has looked to background principles of contract law to interpret compacts that are silent on a particular issue." (cleaned up)); *see also Taylor Morrison Servs., Inc. v. Ecos*, 163 So. 3d 1286, 1289 (Fla. Dist. Ct. App. 2015) ("When the language is unclear or ambiguous, it is appropriate to apply established principles of interpretation to discern the meaning of the governing text."); *Babb v. Wilkie*, 589 U.S. 399, 417 (2020) (Thomas, J., dissenting) ("And it goes without saying that an ambiguous provision does not contain the clear language necessary to displace the default rule."). And the default rule in Florida is that, "[i]n the absence of a contractual provision specifying a place of payment, it is presumed that payment is due at the creditor's place of business." *Brennan*, 322 F. App'x at 855; *see also Glob. Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 468 (Fla. Dist. Ct. App. 2003) ("Florida courts have consistently held that where the contract is silent as to place of payment, it is presumed to be the place of residence of the payee."). "This presumption, standing alone, can satisfy Florida's long-arm statute." *Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*, 484 F. App'x 322, 327 (11th Cir.

[3] Florida law is the same. *See Rensin v. State, Off. of Atty. Gen., Dep't of Legal Affs.*, 18 So. 3d 572, 574 (Fla. Dist. Ct. App. 2009) ("[W]here a defendant seeks to contest the allegations of the complaint relating to personal jurisdiction, the defendant must file an affidavit in support of his or her position.").

2012) (citing *Kane v. Am. Bank of Merritt Island*, 449 So.2d 974, 975 (Fla. Dist. Ct. App. 1984)); *see also Thomsen v. Arts*, 2012 WL 13014713, at *4 (S.D. Fla. May 24, 2012) (Moore, J.) ("Where a contract does not state the place where payment is due, the legal presumption is that a debt is to be paid at the creditor's place of business. This presumption is sufficient to satisfy the Florida long-arm statute's requirement of a failure to perform acts required by the contract to be performed in Florida."). So, to the extent the Purchase Orders are unclear about where the payments were to be made, Florida law resolves that ambiguity by presuming that BLU's place of business (Florida) was the place where those payments were due.

In sum, "[t]here is specific jurisdiction under Florida's long-arm statute, FLA. STAT. § 48.193(1)(a)(7), because the breach of contract (failure to pay) occurred in Florida." *Crossroads Fin. Grp., LLC v. Prescott*, 2023 WL 3172010, at *1 (S.D. Fla. Mar. 28, 2023) (Middlebrooks, J.); *see also World Fuel Servs., Inc. v. First Serv. Bank*, 2024 WL 3673018, at *4 (S.D. Fla. Aug. 6, 2024) (Altman, J.) ("World Fuel points to FLA. STAT. § 48.193(1)(a)(7), which confers jurisdiction against a foreign defendant who 'breaches a contract in this state by failing to perform acts required by the contract to be performed in this state.' World Fuel believes that FSB did just that when it 'refused to make payment to World Fuel in accordance with the Letter of Credit, thereby breaching its contractual agreement in Florida.' We agree." (quoting FLA. STAT. § 48.193(1)(a)(7) (alterations omitted))).

**c. The Defendants Conceded Jurisdiction Over Counts II–IV**

As we've indicated, the Defendants failed to advance any personal-jurisdiction challenge to Counts II–IV in their Motion to Dismiss. *See generally* MTD. "Where a defendant does not raise the defense of lack of personal jurisdiction at the appropriate time in the district court, the objection is waived and the defendant is considered to have conferred jurisdiction by consent." *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1353 (11th Cir. 1982). Put another way, because the Defendants didn't dispute personal jurisdiction as to Counts II–IV, they've consented to our

jurisdiction over them as to those counts. *See Paradazi*, 896 F.2d at 1317 ("A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent."); *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) ("It is well-settled that lack of personal jurisdiction is a waivable defect, and that a defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a Fed. R. Civ. P. 12 motion.").

Perhaps realizing this misstep, the Defendants raise a new argument in reply, where they argue that "BLU's Response makes no effort to distinguish the alleged acts of Excess from those of Cobby Pourtavosi." Reply at 8. We agree. The Complaint *does* fail to distinguish between the alleged misconduct of the two Defendants. But we won't grant the MTD on this basis for two reasons. *First*, it's well-established that "[a]rguments made for the first time in the reply brief . . . are forfeited." *NLRB v. Allied Med. Transp., Inc.*, 805 F.3d 1000, 1009 (11th Cir. 2015). *Second*, the Defendants don't explain *how* (if at all) BLU's failure "to distinguish" between Excess and Pourtavosi affects our personal jurisdiction over them.[4]

[4] In responding to the MTD, the Plaintiff embraces a *separate* theory of personal jurisdiction—that "BLU has established a factual basis for specific jurisdiction pursuant §48.193(1)(a)2 [sic], FLA. STAT., because [the] Defendants committed a substantial aspect of the alleged tort (fraud in the inducement) in Florida." Response at 17; *see also* FLA. STAT. § 48.193(1)(a)(2) (providing for specific jurisdiction over a nonresident defendant who commits a "tortious act within" Florida). This, too, is improper. The Plaintiff's Subsection (1)(a)(2) argument appears *nowhere* in the Complaint, which alleges instead that the Defendants "caused injury to persons or property within the state of Florida" and that they "breached a contract(s) in the state of Florida by failing to perform acts required by the contract(s) to be performed in this state." Complaint ¶ 5. As we've said, "we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *see also Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) ("Because [the Plaintiffs] raised this argument for the first time in . . . response to [the] motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised."); *ADT LLC v. Skyline Sec. Mgmt., Inc.*, 2026 WL 575122, at *6 (S.D. Fla. Mar. 2, 2026) (Altman, J.) (rejecting "[t]he Plaintiffs' Subsection (1)(a)(1) argument [because it] appears nowhere in the AC" and because "the Plaintiffs introduce their Subsection (1)(a)(1) theory *only* in response to the MTD").

"[A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). And "[i]t is not incumbent on this Court to make the parties' arguments for them." *Bacarella v. Prime Hydration, LLC*, 2025 WL 4092572, at *3 (S.D. Fla. Feb. 19, 2025) (Liebowitz, J.); *Cosgun v. Seabourn Cruise Line Ltd. Inc.*, 2023 WL 2660243, at *2 (S.D. Fla. Mar. 28, 2023) (Altman, J.) ("It's typically not our role to make the parties' arguments for them."). "Because our adversarial system demands that we accept strategic litigation choices and adjudicate only those arguments the parties actually presented," we needn't determine on our own whether Counts II–IV satisfy the Florida long-arm statute. *Tundidor v. Hernandez*, 2026 WL 1800959, at *29 (S.D. Fla. June 23, 2026) (Altman, J.); *see also United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) ("[I]t is inappropriate for a court to raise an issue *sua sponte* in most situations."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed [forfeited].").

**III. Due Process**

Finally, we must decide whether the exercise of personal jurisdiction over the Defendants comports with the Due Process Clause of the U.S. Constitution. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) ("If *both* Florida law *and* the United States Constitution permit, the federal district court may exercise jurisdiction over the nonresident defendant." (emphases added)); *World Fuel Servs., Inc.*, 2024 WL 3673018, at *5 ("Even so, a promise to make payments in the forum state, standing alone, does not constitute minimum contacts and therefore does not comport with the due process clause." (quotations omitted)). "The Due Process Clause requires, in the case of specific personal jurisdiction, that an out-of-state defendant have certain 'minimum contacts' with the forum state." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1340–41 (11th Cir. 2025)

(quotation marks omitted). "An out-of-state defendant has minimum contacts with the forum when (1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Id.* at 1341 (quotation marks omitted).

Our Plaintiff clears all three hurdles. *First*, its claims "arise out of" or "relate to" the Defendants' Florida contacts. This standard requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor*, 592 U.S. at 359–60 (cleaned up); *see also id.* at 362 (explaining that the *arise-out-of* inquiry "asks about causation," while the *relate-to* inquiry "contemplates that some relationships will support jurisdiction without a causal showing"). Here, a "direct causal relationship" tethers the claims, the Defendants, and Florida, *Louis Vuitton*, 736 F.3d at 1356, since the Complaint alleges that Pourtavosi (on behalf of Excess) "traveled to Florida on several occasions specifically to meet with BLU to negotiate the terms of the transactions that are the subject of this action," Complaint ¶ 4, and that, during those visits, "Pourtavosi represented that he was personally guaranteeing that Excess would timely perform pursuant to the purchase orders," *id.* ¶ 46. We thus find that the claims arise out of, or at least relate to, Pourtavosi's trips to Florida, in which he negotiated, and then promised to personally guarantee, the Purchase Orders, all of which were "targeted at or directed to Florida residents." *Del Valle*, 56 F.4th at 1275.

*Second*, a "defendant purposefully directs its activities" at Florida "when 'a meeting in the forum state involves significant negotiations of important terms' of a contract." *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392–93 (11th Cir. 1988) (quoting *Sea Lift, Inc. v. Refinadora Costarricense Petroleo, S.A.*, 792 F.2d 989, 993 (11th Cir. 1986)). A defendant purposefully avails itself of the forum where the business meetings it conducts in the forum contemplate "a continuing relationship." *Ibid.* Conversely,

courts hesitate to find purposeful availment if *either* "a contract [ ] is entirely boilerplate" *or* the forum-directed business relationship involves only "a one-shot operation." *Sea Lift*, 792 F.2d at 993–94. Here, the "Defendants traveled to Florida on several occasions specifically to meet with BLU to negotiate the terms of the transactions," Complaint ¶ 5, and those meetings "involve[d] significant negotiations of important terms," *Sea Lift*, 792 F.2d at 993.

The Defendants argue that they "have never traveled to Florida for business related to this matter or conducted any in-person meetings there in connection with the relevant transactions." MTD at 4; *see also* Declaration of Cobby Pourtavosi, CEO of Excess ("Pourtavosi Decl."), at 2 ("At no time did I, or any employee or agent of Excess Telecom, travel or conduct business in Florida in connection with the transactions referenced in the Complaint."). Because the Defendants "submitt[ed] affidavit evidence in support of [their] position," the burden "shifts back to the [P]laintiff to produce evidence supporting jurisdiction." *Louis Vuitton*, 736 F.3d at 1350. Our Plaintiff has done just that. In response to the Defendants' assertions, the Plaintiff's CEO, Mr. Cohen, submitted his own affidavit, attesting that he "know[s] Pourtavosi's above-quoted statement to be false because [he] was personally involved in and present for a meeting where Pourtavosi traveled to Miami and met members of BLU Products' executive team" at "Carbone" in "Miami Beach[.]" Cohen Decl. ¶ 6. Mr. Cohen swears that, at this dinner, "Pourtavosi proposed and we discussed at length a plan for Excess to place purchase orders with BLU Products for the procurement and purchase of millions of smart mobile devices to be specially manufactured for Excess." *Id.* ¶ 9. Cohen further attests that "Excess' New Business Development Officer, Erwin Ramos, [ ] flew to Miami to meet with BLU Products' team at [BLU's] Doral office on June 13, 2024." *Id.* ¶ 16. Ramos then "attended dinner with BLU Products' team at Carbone . . . making a third meeting between BLU Products' and Excess executives in Miami." *Id.* ¶ 18. "Thus," BLU concludes, "on at least two occasions and over the course of three separate meetings, the evidence shows that Defendants traveled to Florida to meet with BLU in furtherance of

developing the contractual relationships" at issue in this case. Response at 6. In other words, the Plaintiff's Complaint alleges—and its supporting evidence corroborates—that Excess "purposefully direct[ed] its activities" at Florida when the parties held "meeting[s]" in Florida, that those Florida meetings "involve[d] significant negotiations of important terms" of the Purchase Orders, *Sea Lift*, 792 F.2d at 993, and that those meetings contemplated "a continuing relationship," *Honeywell*, 854 F.2d at 393.[5]

Because there is now a conflict in the evidence about this crucial jurisdictional issue, we must construe all reasonable inferences in favor of the Plaintiff. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) ("Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.").

In their reply, the Defendants include a Second Pourtavosi Affidavit [ECF No. 34-1] that contradicts the Plaintiff's characterization of these meetings. *See* Second Pourtavosi Affidavit at 2 ("The Declaration of Saul Cohen, filed on June 16, 2025[,] in this matter, is mistaken and/or false as to this dinner. In actuality, I and the aforementioned, other individuals were already in Florida prior

[5] Our Defendants *might've* argued that the corporate-shield doctrine prevents us from exercising personal jurisdiction over Pourtavosi. *See Rogers v. Nacchio*, 241 F. App'x 602, 606 (11th Cir. 2007) ("[T]he Florida Supreme Court has held that a defendant's actions taken within the scope of his employment as a corporate officer will not provide a basis for personal jurisdiction under the long-arm statute."); *Harrison v. NC3 Sys., Inc.*, 395 So. 3d 657, 663 (Fla. Dist. Ct. App. 2024) ("Under the corporate shield doctrine, the actions of a corporate employee in a representative capacity do not form the basis for jurisdiction over the corporate employee in their individual capacity."). But the Defendants never press this argument. In fact, they never so much as cite the corporate-shield doctrine at all. "Because our adversarial system demands that we accept strategic litigation choices and adjudicate only those arguments the parties actually presented," we needn't consider whether the corporate-shield doctrine applies here. *Tundidor*, 2026 WL 1800959, at *29; *see also Cosgun*, 2023 WL 2660243, at *2 ("It's typically not our role to make the parties' arguments for them."); *Campbell*, 26 F.4th at 872 ("[I]t is inappropriate for a court to raise an issue *sua sponte* in most situations."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed [forfeited].").

to the dinner, for a recreational, social gathering. The May 10, 2022 dinner with the BLU individuals was a social gathering, incidental to the Excess members' and Mr. Yammer's pre-existing recreation and socializing in Florida. . . . Mr. Cohen mis-recollects and/or misrepresents of the nature [sic] of the May 10, 2022 dinner in his Declaration, as it was actually a simple social gathering amongst friends and pre-existing business colleagues between Blue and Excess, that was scheduled casually, and socially, after the Excess individuals and Mr. Yammer were already in Florida on unrelated, aforementioned recreational activities."); *id.* at 3 ("[T]o the extent that there was any discussion of considerations for additional, future business ventures, same was *de minimus*, non-committal, and simply a by-product of the larger function of the dinner, which was for friends and pre-existing business colleagues between Blue and Excess to get together and enjoy each other's social company[.]"); *ibid.* ("Specifically, [Mr. Cohen's] statement that, 'the parties['] entire business arrangement was solicited and negotiated during their three above-discussed meetings that all occurred in South Florida,' is high[ly] inaccurate."). These new statements don't alter our conclusion at all.

"In order for Moving Defendants to have properly challenged the merits of personal jurisdiction, they must have attached affidavits, documents, or testimony to their Motion to Dismiss, not to their Reply brief." *Oviedo v. Ramirez*, 2022 WL 1641865, at *4 (S.D. Fla. May 24, 2022) (Bloom, J.); *see also NLRB*, 805 F.3d at 1009 ("Arguments made for the first time in the reply brief . . . are forfeited."). We therefore will not consider the Second Pourtavosi Affidavit.

But here's the thing: Even if we did credit Pourtavosi's second affidavit, we'd be left in the same position we're in now—with conflicting evidence on the central jurisdictional issue. And, as we've said, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands*, 593 F.3d at 1257 (citation omitted). That means accepting the Plaintiff's characterization of the meetings as sufficient to subject the Defendants to personal jurisdiction in Florida.

*Finally*, the Plaintiff satisfies the third element of the due-process test. "Once it has been established that a defendant has purposefully directed his activities at a particular forum, courts still should determine if the assertion of personal jurisdiction would comport with fair play and substantial justice." *SEC v. Marin*, 982 F.3d 1341, 1350 (11th Cir. 2020). In conducting that analysis, we consider "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* at 1355.

All four of these factors support our exercise of personal jurisdiction here. *First*, the Defendants don't even argue that litigating in our District would create an "inconvenience" of "a constitutional magnitude." *Diamond Crystal Brands*, 593 F.3d at 1274 (quotation marks omitted). Nor could they. *See Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947–48 (11th Cir. 1997) ("[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern . . . . [D]ue process protections against inconvenient litigation have been substantially relaxed."); *Marin*, 982 F.3d at 1351 ("Flying to Florida is no more unusual . . . than following Duke Ellington's famous counsel to take the A train."). *Second*, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Tufts v. Hay*, 977 F.3d 1204, 1212 (11th Cir. 2020). *Third*, BLU is headquartered in Doral, Florida, *see* Complaint ¶¶ 16, and has an obviously compelling interest in litigating this important case close to home. And *fourth*, "[t]he judiciary has an interest in efficiently resolving [a] dispute in the forum where an extensive record was established." *Louis Vuitton*, 736 F.3d at 1358.

On this record, in short, we cannot say that our decision to exercise personal jurisdiction over the Defendants would violate the Due Process Clause of the U.S. Constitution.

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** that the Motion to Dismiss [ECF No. 22] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on August 20, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record